## COHN v. CHAPMAN.

Opinion delivered October 24, 1921.

1. TRIAL—INSTRUCTIONS—SPECIFIC OBJECTION.—Where an instruction, fairly construed, submitted an issue to the jury, if a party conceived that it was faulty in assuming a fact not established by the pleadings or the testimony, he should have directed the court's attention to it specifically.

2. EVIDENCE—VARYING WRITTEN CONTRACT BY PAROL—WAIVER OF OB-
   JECTION.—Where the pleadings raised an issue as to whether there
   was an oral warranty as to the soundness of a horse, in a sale
   witnessed by a writing, and the testimony sustaining this issue
   was introduced without objection, appellant will be held to have
   waived the objection.

Appeal from Prairie Circuit Court, Southern District; *George W. Clark,* Judge; affirmed.

*Trimble & Trimble* and *John W. Newman,* for appellant.

Oral evidence of a warranty is inadmissible when a complete written instrument evidences a sale. 80 Ark. 508; *Federal Truck Motors Co.* v. *Thompson,* 149 Ark. 664.

*Cooper Thweatt,* for appellee.

There was no error in the instruction of the court on the subject of warranty as to the first horse that died. 124 Ark. 31. The objection to the instruction should have been specific. 134 Ark. 218; 78 Ark. 327; 110 Ark. 118; 115 Ark. 118; 111 Ark. 196; 73 Ark. 594; 87 Ark. 607; 98 Ark. 88; 9 Encyclopedia of Evidence, p. 366; 22 C. J. 1295. Notice of the breach was not necessary. 53 Ark. 159.

WOOD, J. The appellant instituted this action against the appellee to recover judgment on an instrument executed February 28, 1918, and due November 1, 1918. The first part of the instrument was a regular promissory note in the sum of $200 given as the consideration of the purchase price for a certain brown mare. The latter part reserved title in the seller to the animal until the purchase price was paid, and contained other provisions evidencing the contract of sale. The appellee answered admitting the execution of the "note" and set up by way of counterclaim that the "note" was a part of the purchase price of $400 for two horses that the appellee had bought from the appellant; that $200 had previously been paid by check; that before any of the purchase price was paid or the "note" executed the appellee directed appellant's at-

tention to the fact that one of the horses appeared sick; that appellant verbally warranted that the horses were sound. The appellee alleged that he relied upon the warranty and accepted the horses and gave his check and note for the purchase price. He further alleged that one of the horses at the time was diseased and unsound, and died in less than twenty-four hours thereafter, to the damage of appellee in the sum of $200. Appellee further alleged that in April of that same year he purchased of the appellant a horse for which he paid the sum of $150, and that before appellee accepted the horse appellant warranted the same to be sound in every way; that the horse was not sound and died in about seven days after the purchase; that appellee was damaged in the sum of $150 by reason of the death of this horse. He prayed judgment on his cross-complaint in the sum of $350 and asked that the judgment offset the note held by appellant in the sum of $200 and that appellee have judgment over against the appellant in the sum of $150.

The appellant answered the cross-complaint and denied all of its allegations; denied that the horse for which the note was given was unsound or diseased; denied that he warranted the same to be in good condition. He alleged that the horse for which the "note" was given was worth $200, and that the appellee was present, examined the horse and was satisfied with same and made no complaint until after the "note" in suit became due. He also denied that he warranted the second horse purchased by appellee from appellant in April of the same year for which the appellee paid $150. He alleged that this second horse was sound, and that the appellee was present, examined the horse, and made no complaint of same until after the institution of the suit. Appellant prayed that the counterclaim of appellee against him be dismissed, and that he have judgment as prayed in his complaint.

The testimony of the appellant was to the effect that he sold appelle horses, and that appellee was due

him the sum of $200 on the purchase price as evidenced by appellee's "note," the instrument upon which the cause of action is based. He stated that not a word was said at the time about the unsoundness of one of the horses. Appellant guaranteed the horses to be serviceable and sound on delivery. He stated that Chapman knew as much about a horse as appellant; knew a good horse from a bad one; that when the horses were taken from appellant's stables they were all right; that in about three weeks, or maybe longer, the appellee came back and told the appellant that one of the horses had died. Appellant told the appellee that he was sorry to hear of the loss of the horse, and then sold him another horse (worth $250) for $150, so that he would lose $100 on the price of that horse; that the appellee agreed to this and gave the appellant a check for $150 and seemed satisfied. Appellant heard no more from the appellee until the note became due and the appellee refused to pay the same. The appellant stated that he would not sell unsound horses; that he had a man paid especially to look after his barn. Appellant "had the reputation of selling the best mules and horses in the country." The appellant did not owe the appellee anything because when he delivered the horses to him they were sound. When the appellee came back and told appellant that he had lost one of the horses, appellant agreed to let him have a $250 horse for $150. Nothing was said at the time about this horse not looking right. The appellee gave appellant a check for $150 for the last horse, which was in settlement of the whole matter between them, and appellee said that he was satisfied. The testimony of the appellant was corroborated by another witness who was in the employ of the appellant at the time and was present when the sales were made. The appellant guaranteed that the horses were serviceable and sound at the time they were delivered, and so far as witness knew they were sound. When appellee bought the last horse of appellant, the purchase price

was $250, and appellant agreed to let appellee have the same for $150 and appellee was perfectly satisfied.

The testimony of the appellee tended to sustain the allegation of his counterclaim. He stated that on the day of the first purchase he went away to St. Louis and was gone about a week, and upon his return one of the horses was dead. He notified the appellant to that effect, and appellant stated that he would get appellee another horse. The matter drifted along for some time, and appellant called the appellee over the telephone, stating that he had a horse that would match. Appellee then went to see appellant to get another horse and reminded appellant that he was to get appellee a horse to take back in the place of the one that had died. Whereupon the appellant replied that he had to have $150 on the horse that he then proposed to let appellee have. He stated that he would make appellee a special price of $150. Appellee had to have the horse, and appellant said he would guarantee it absolutely. Appellee then took the horse home, and it died in about a week. Appellee thought that he notified appellant, but did not know whether it was immediately after this last horse died or not. The appellant wrote the appellee when the note was due, and also called him over the telephone and asked why the note was not paid. Appellee told appellant he had guaranteed the horses, and that they were both dead, and that appellee was willing to lose one if appellant would lose the other. Appellant replied that appellee would have to pay the note. Appellee then testified that at the time of the sales appellant guaranteed the horses; that he told the appellee at the time he purchased the last horse that if it died it was his (appellant's) loss, and that it was upon these representations and guaranty that appellee took the horses. Another witness on behalf of the appellee testified, tending to corroborate the testimony of the appellee to the effect that the appellant at the time of the sale of the horses in February guaranteed the same to be absolutely sound.

The court instructed the jury in part as follows: "The plaintiff alleges, in rebuttal of the rights of the defendant to recover on the counterclaim, that, in the sale of the third horse, that in that transaction certain concessions of price amounting to the sum of $100 were allowed in the sale of this horse, by which all liability by reason of any differences of any liabilities that might arise in the sale of the two horses made on the 28th day of February should be eliminated; and that it was agreeable and acceptable and satisfactory to the defendant in this case. This the defendant denies, but claims that the sale was made to him in the direct course of business, and on a guaranteed price of $150. The question for you to decide here first is, what was the warranty as between these two parties? If you find from the evidence that plaintiff's contention is true, as to his warranty of the horses only, as to the soundness at the time of delivery, and found the horses sound when he delivered them to him, then the defendant must fail on his cross-complaint. If you find from the evidence that plaintiff warranted the horses as to not only the soundness of them at the time of delivery but a reasonable time thereafter, and the horses were not sound, and died from the result of a disease they were then infected with, then the defendant would be entitled to recover on his cross-complaint." The court told the jury that the burden was upon the appellee to establish the allegations of his cross-complaint.

The appellant objected generally to each of the instructions of the court, and he complains here that the instructions set out above assume that the plaintiff (appellant) admitted liability on the warranty of the first horse, when in fact the plaintiff (appellant) in his reply and in his testimony denies that there was any such warranty. No specific objection was made to the language of the instruction of which appellant here complains. The instruction, when considered as a whole, is not open to the objection which appellant urges. When the latter part of the instruction is read, it is clear that

the court did not intend by the language of the first part (to which appellant now objects) to assume that there was no issue before the jury as to the liability of the appellant on the alleged warranty of the soundness of the first horse. On the contrary, the instruction, fairly construed, submits to the jury the issue as to whether or not the appellant was liable on any warranty as to the soundness of the horses at the time of their delivery and for a reasonable time thereafter. If appellant conceived that the instruction was faulty in assuming a fact not raised by the pleadings or the testimony, he should have specifically directed the attention of the court to it. *Wright* v. *Midland Valley Ry. Co.*, 111 Ark. 196.

The appellant and his corroborating witness testified that the appellant did warrant that the horses were sound at the time of the delivery, and the appellee testified in effect that the appellant absolutely guaranteed the horse, and, if it died within a reasonable time, it was to be appellant's loss, and not appellee's. The jury might have found from the testimony that the horses in controversy were sold by the appellant and bought by the appellee in the ordinary course of business. The testimony of appellant himself showed that he was engaged in the business of buying and selling horses, and prided himself on the reputation he had acquired of "selling the best mules and horses in this country." The appellee's testimony tended to prove that he did not agree to pay appellant the sum of $250 as a purchase price of the last horse, and that he paid appellant $150 in cash, and that appellant allowed appellee $100 in settlement of his claim on the warranty of the horse that died. The appellee testified that such "was not the deal and trade." He paid appellant $150 as the straight-out purchase price; that appellant cut down the price on account of appellee's having purchased three horses.

But again, if the appellant conceived that there was nothing to warrant the submission of the issue as to

whether the last purchase was "made in the direct course of business," he should by specific objection have called the court's attention to this phraseology of the instruction. The pleadings raised the issue as to whether or not there was an oral warranty as to the soundness of the horses, and the testimony on behalf of the appellee sustaining this issue was introduced without objection. The appellant is, therefore, not in an attitude to complain because the court submitted such issue to the jury. Indeed, appellant himself adduced testimony and presented prayers for instructions on that issue, which prayers were modified and given. The appellant here, for the first time, urges the objection that the testimony and instructions of the court submitted the issue of an oral warranty contrary to the writing which evidenced the contract of sale between the parties. By not raising this issue in the court below, he must be held to have waived it, and the contention that an oral warranty has been engrafted on a written contract of sale cannot avail for a reversal of the judgment by this court. *Frauenthal v. Bridgeman,* 50 Ark. 348; 22 Corpus Juris, p. 1295.

There is no error in the rulings of the court. The judgment is therefore affirmed.